JUSTICE RICE
dissenting.
¶39 I dissent. I submit that the Court has failed to properly apply all of the controlling statutes.
¶40 In ¶ 23, the Court correctly frames the precise statutory issueAvhether a property damage exclusion, which is allowed by §61-6-103(5), MCA [the Montana Safety-Responsibility Act, enacted in 1951], also is a valid exception to coverage mandated by § 61-6-301(l)(a), MCA [the Mandatory Liability Protection Act, enacted in 1979].”
*152 ¶41 The Court correctly notes that the Safety-Responsibility Act was enacted to require only “bad drivers” to obtain liability insurance. See ¶ 22. Other drivers, presumably “good drivers,” could voluntarily obtain liability insurance, but were not required to do so by the Safety-Responsibility Act. This distinction between ‘bad” and “good” drivers still exists within the Safety-Responsibility Act, which requires that drivers who have had their licenses revoked must obtain ‘¡proof of financial responsibility’ before their driving privileges are restored. Section 61-6-131, MCA. Such proof, consisting of either a certificate of insurance, certificate of self-insurance, bond or deposit of money or securities, see §61-6-132, MCA, must be submitted to the Department. Liability policies submitted as “proof of financial responsibility” must be certified pursuant to §§61-6-133 or -134, MCA. The requirement to provide “proof of financial responsibility” does not extend to drivers whose privileges have not been revoked.
¶42 Consistent with these requirements, the Safety-Responsibility Act defines a “ ‘motor vehicle liability policy,’ as the term is used in this part,” as meaning “an owner’s or operator’s policy of liability insurance, certified as provided in 61-6-133 or 61-6-134 as proof of financial responsibility ....’’Section 61-6-103(1), MCA (emphasis added). Unlike policies obtained for purposes of the Safety-Responsibility Act, liability policies obtained by “good” or “nnrevoked” drivers in order to satisfy § 61-6-301(1), MCA, are not submitted to the Department to certify proof of financial responsibility. Indeed, State Farm’s policy here recognized this distinction. State Farm Montana Policy Form 9826.4, Section LLiability -Coverage A, Financial Responsibility Law, p. 11.
¶43 The statutory distinction between these two liability policies is cemented by another provision in the 1951 Safety-Responsibility Act, now codified as §61-6-136(1), MCA, which is overlooked by the Court’s opinion. It provides:
Other policies not affected. (1) This part shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state ....
This provision indisputably draws a line between the Safety-Responsibility Act and other legislative acts which require liability insurance, such as the Mandatory Liability Protection Act, adopted twenty-eight years later. We acknowledged this separation in Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 177, 656 P.2d 820, 822: ‘Section 61-6-136, MCA, precludes any relationship between the two parts.” We thus held that “[t]he two parts are independent.” *153 Royle, 202 Mont. at 177, 656 P.2d at 822.
¶44 The Court offers, accurately, that our subsequent decision in Bain “did not hold that the two provisions were independent of each other.” See ¶ 26. However, the support which the Court draws for its holding from this negative inference is insufficient, in my view, to override the plain language of the statutes themselves, which Royle correctly explained. Likewise, the Court notes in ¶ 27 that, in Stutzman, we stated that [p]ursuant to §61-6-103(8), MCA, optional underinsured motorist coverage is not subject to the provisions of Montana’s Motor Vehicle Safety-Responsibility Act.”This statement from Stutzman was surely correct as to the Safety-Responsibility Act, but, unfortunately, that Act was not at issue in Stutzman. Stutzman had argued for application of the Mandatory Liability Protection Act (§ 61-6-301, MCA), not the Safety-Responsibility Act. While the Court may have intended to refer to the Mandatory Liability Protection Act, the error is more than one of nomenclature. By this brief reference, the Court incorrectly fused provisions of two legislative acts, without discussing either the distinctions made by their very terms or Royle’s analysis that they were separate and independent.[3] Lastly, Babcock involved a first party claim for liability coverage for a damaged trailer made after the insured had already received payment under the policy’s collision coverage. Babcock, ¶¶ 7-8. Further, the issue there was one of policy interpretation; the statutes were not at issue.
¶45 Consequently, I believe that the mandatory coverage provision of § 61-6- 301(l)(a), MCA, is controlling here. The claims made by plaintiffs are for loss[es] resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle.” As such, Hagel’s policy was required to provide liability coverage for these claims.
¶46 I do not disagree with the observation in State Farm’s brief that Ti]t is illogical and inequitable if the property of persons being transported by ‘bad drivers’ under the Motor Vehicle Safety-Responsibility Act may be excluded from liability coverage while property being transported by the maj ority of Montana’s insureds may not be likewise excluded, under Montana’s [Mandatory Liability Protection Act.]” However, I believe the Acts create this very *154 distinction, which has not been erased by the treatment of the statutes in our cases. It may be that policymakers once envisioned providing a different kind of liability policy for high risk drivers, but, for whatever reason, the statutes create the distinction, and I believe reversal is required.

 Although reference to §61-6-103(8), MCA, may not have been necessary to our conclusion in Stutzman that underinsured motorist coverage was not statutorily mandated, the greater error for purposes of this case is the conñision caused regarding the two Acts.